UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LARRY S. DRAGNA, ET AL.             CIVIL ACTION

VERSUS            12-449-SDD-RLB

A&Z TRANSPORTATION, INC., GREAT
WEST CASUALTY COMPANY AND
ROBEL ABDLL

## RULING

This lawsuit arises out of a motor vehicle accident that occurred on November 2, 2011 in Gonzales, Louisiana, involving a motor vehicle driven by the Plaintiff, Larry Dragna (Dragna), and a tractor trailer driven by Abdi Roble (Roble)[1], a truck driver employed by A&Z Transportation, Inc. (A&Z).[2] At the time of the accident, Roble was *en route* to collect a load from BASF pursuant to KLLM Logistics' and A&Z's Broker-Carrier Agreement.[3] Roble was cited for failure to yield while making a left turn.[4] Dragna was not cited with any traffic violations.[5] The overarching issue before the Court is whether KLLM bears any liability for the collision.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Dragna filed suit for damages in state court against Roble and A&Z Transportation, and their insurer, Great West Casualty Company (Great West), on

---

[1] In their *First Amended Complaint*, Plaintiffs replaced the name of Defendant "Roble Abdall" with his correct name, "Abdi Roble." Rec. Doc. 14, p. 2.
[2] Plaintiffs have alleged that Roble was acting in the course and scope of his employment with A&Z Transportation, Inc. at the time of the accident. Rec. Doc. 72, p. 5. Plaintiffs have also specifically alleged that A&Z Transportation was Roble's employer. Rec. Doc. 72, p. 6.
[3] Rec. Doc. 59, p. 54.
[4] Rec. Doc. 56-4, Exhibit 1. The Court declines making a finding of fault as to Roble.
[5] Rec. Doc. 56-4, Exhibit 1. The Court declines making a finding of fault as to Roble.

behalf of himself, his wife, and their minor child. On July 27, 2012, Great West timely removed invoking the Court's diversity jurisdiction.[6] Plaintiffs amended their complaint to name KLLM Transportation, LLC, among others, as additional Defendants.[7] Plaintiffs have since resolved their negligence claims against Roble and A&Z; however, their claims against KLLM Transport Services, LLC d/b/a KLLM Logistics Services remain.[8]

Notably, KLLM Transport Services ("KLLM")[9] has two operating divisions relevant to this suit—KLLM Transport and KLLM Logistics Services.[10] KLLM Transport is a federally authorized motor carrier[11] which had a Motor Transportation Contract with BASF Chemical to haul commercial freight,[12] and KLLM Logistics is a federally authorized motor carrier Broker[13] which had a Broker-Carrier Transportation Agreement with A&Z Transportation.[14] Prior to the accident, BASF had notified KLLM Transport of a load it needed collected from its Geismar, Louisiana facility; however, KLLM Transport

---

[6] Rec. Doc. 1. Plaintiffs are residents of and domiciliaries of Louisiana; A&Z Transportation's registered office is in Goodlettsville, Tennessee; Abdi Roble is a resident and domiciliary of Columbus, Ohio; and Great West is incorporated in Nebraska with its principal place of business in Nebraska. Rec. Doc. 1-2.

[7] Plaintiffs have filed three Amended Complaints. Rec. Doc. 14; Rec. Doc. 28; Rec. Doc. 72. The additional defendants named by the Plaintiffs were Alex Naqvi, resident and domiciliary of Tennessee, Zaibi Naqvi, resident and domiciliary of Tennessee; Zaibi Naqvi, resident and domiciliary of Tennessee; KLLM Transport Services; and XYZ Insurance Company, true name unknown, in its capacity as KLLM Transport Services, LLC's liability insurer. Plaintiffs alleged that KLLM Transport Services, LLC is a non-resident limited liability company and citizen of Mississippi. Rec. Doc. 28, p. 3. KLLM answered that it is a non-resident limited liability company formed under and pursuant to Texas laws. Rec. Doc. 34, p. 2.

[8] Plaintiffs have settled their claims against A&Z Transportation, Roble, Great West Casualty Co., Alex Naqvi, Mohammad Naqvi, and Zaibi Naqvi. Rec. Doc. 35 (*Notice of Settlement Agreement and Partial Joint Motion to Dismiss with Prejudice*). Rec. Doc. 69, p. 2.

[9] Plaintiffs argue that "the fact that KLLM operates under two 'divisions' (transport/logistics) having different FMSCA 'authorities' (motor carrier/broker), should not be misconstrued to represent anything other than the fact that KLLM Transport and KLLM Logistics are one in the same for the purposes of this litigation." Rec. Doc. 69, p.6. The Court notes that Plaintiffs have never alleged the existence of a single business enterprise between KLLM Transport and KLLM Logistics in any of their complaints, and such a determination is irrelevant to the issues before the court.

[10] Rec. Doc. 58, pp. 27-28 (KLLM Transport and KLLM Logistics each have their own authority, one as motor carrier and one as broker).

[11] Rec. Doc. 58, pp. 27-28; Rec. Doc. 58, p. 71 (USDOT No. 154237, MC138308).

[12] Rec. Doc. 56-4, p. 167.

[13] Rec. Doc. 58, pp. 27-28; Rec. Doc. 58, p. 63 (USDOT No. 2242467, MC649560).

[14] Rec. Doc. 58, p.1; Rec. Doc. 56-4, p. 19.

was unable to accommodate this BASF transportation assignment.[15] Therefore, KLLM Transport referred the available BASF load assignment to KLLM Logistics to broker the load with another DOT-authorized carrier.[16] On November 1, 2011, KLLM Logistics selected A&Z to transport the BASF load.[17] The vehicular accident giving rise to Plaintiffs' claims occurred the next day while A&Z's driver was *en route* to pick up the freight at BASF.

Plaintiffs specifically contend that KLLM remains liable on three grounds: joint venture liability as A&Z's partner; vicariously liable for A&Z's driver's fault; and directly liable for negligently hiring A&Z. Plaintiffs' liability claims against KLLM are the subject of three motions for partial summary judgment[18] pending before the Court which seek disposition of the following theories of liability:

1. Whether KLLM Transportation, LLC. d/b/a KLLM Logistics ("KLLM") has vicarious liability for the fault of A&Z Transport driver Abdi Roble;

2. Whether KLLM and A&Z Transportation, Inc. were joint venturers at the time of the subject motor vehicle accident resulting in KLLM's liability for the fault of driver Abdi Roble; and

3. Whether KLLM was negligent in hiring A&Z Transportation, Inc. as a motor carrier.

In sum, KLLM argues that the uncontested facts do not support Plaintiffs' liability claims and, therefore, they must be dismissed. In contrast, Plaintiffs argue that the

---

[15] Rec. Doc. 57-1, p. 14; Rec. Doc. 90, p. 6.
[16] Rec. Doc. 57-1, p. 14; Rec. Doc. 90, p. 6.
[17] A&Z was a DOT-authorized carrier. (USDOT No. 2002676; MC708803). Rec. Doc. 56-4, p. 18 and 33.
[18] Rec. Docs. 55, 56, and 57.

3

evidence undisputedly supports their liability claim against KLLM, under one or more of the above theories, entitling Plaintiffs to a judgment as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[20] "A party moving for summary judgment 'must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case.'"[21] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[22] However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[23]

---

[19] Fed.R.Civ.P. 56(a)(West 2014).
[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
[21] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552).
[22] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).
[23] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted)).

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24] All reasonable factual inferences must be resolved in favor of the nonmoving party.[25] Nevertheless, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[26] "Conclusory allegations unsupported by specific facts, however, will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[27] Ultimately "[t]he substantive law dictates which facts are material."[28]

## III. ANALYSIS

### A. Vicarious Liability[29]

Plaintiffs have alleged that KLLM Logistics is vicariously liable for the negligent acts of A&Z Transportation, and its driver Roble, and rely on Louisiana jurisprudence governing the employer-employee relationship to support their contention. However,

---

[24] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 ("If a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial.").
[25] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[26] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[27] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[28] *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).
[29] The parties urge cross motions for summary judgment on the issue of vicarious liability. Rec. Docs. 56 and 57.

5
25282

after reviewing the record, the Court finds that there is an absence of facts to support Plaintiffs' claim.

Section 9 of the Broker-Carrier Transportation Agreement expressly provides that A&Z "shall be an independent for-hire contract carrier and shall not be or acts as an agent or employee of Broker [KLLM]."[30] Hence, based on the express terms of the parties' Agreement, the Court finds that KLLM Logistics' relationship with A&Z Transportation is governed by the law of independent contractors.[31]

Under Louisiana law, a principal, such as KLLM Logistics, is not liable for the negligent acts of an independent contractor "unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."[32] As for the first exception, the following activities have been categorized in Louisiana as ultrahazardous as a matter of law: (1) storage of toxic gas; (2) crop dusting; (3) pile driving; and (4) blasting with explosives.[33] While this is not an

---

[30] Rec. Doc. 55-3, p. 20.
[31] The Court also finds guidance to support the independent contractor relationship between KLLM Logistics and A&Z Transportation in Title 49 of the Code of Federal Regulations. Section 383 of Title 49 is entitled "Commercial Driver's License Standards; Requirements and Penalties," and sets forth certain regulations and rules "to help reduce or prevent truck and bus accidents … and injuries by requiring drivers to have a single commercial motor vehicle driver's license and by disqualifying drivers who operate commercial motor vehicles in an unsafe manner." 49 C.F.R. 383.1. Pursuant to the CFR, an employer in the commercial transportation context is "any person … who owns or leases a commercial motor vehicle or assigns employees to operate such vehicles." Section 4 of the parties' Agreement requires that the "Carrier" or A&Z Transportation "furnish suitable equipment at its own expense for transporting [KLLM Logistics's] commodities. [A&Z Transportation] shall assume and pay all costs and expenses incident to the transportation of shipments tendered under this contract." Therefore, considering that A&Z Transportation was contractually required to provide its own equipment and drivers to transport any shipments, the Court finds that A&Z would be deemed Roble's employer under the CFR definitions, and not KLLM Logistics.
[32] *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997); see also, *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987); *Alfred v. Anadarko Petroleum Corp.*, 2014 WL 6633105, at *4 (M.D.La Nov. 21, 2014).
[33] *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 380 (5th Cir. 2001) (citing *Kent v. Gulf States Utilities*, 418 So.2d 493, at 498 (La. 1982) (citing *Langlois v. Allied Chemical Corp.,* 258 La. 1067, 249 So.2d 133

exhaustive list, it is clear from the allegations and evidence in this case that neither A&Z Transportation nor Roble were engaged in an ultrahazardous activity at the time of the accident; therefore, the Court finds that the first exception is inapplicable.

As for the second exception, the Court's analysis begins with an examination of the parties' contract due the general presumption that "the relationship between the principal and independent contractor is in large measure determined by the terms of the contract itself."[34] Nevertheless, the Fifth Circuit instructs courts to look beyond the terms of the contract to determine whether a principal's actions and practices amount to operational control.[35]

"Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way."[36] The Fifth Circuit, relying on the Restatement of Torts, has described the operational control test as follows:

> In order for a principal to be liable for the actions of an independent contractor, the principal must have retained at least some degree of control over the manner in which the work was done. It is not enough that [a principal] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to the employer, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must

---

(1971); *Gotreaux v. Gary,* 232 La. 373, 94 So.2d 293 (1957); *Craig v. Montelepre Realty Co.,* 252 La. 502, 211 So.2d 627 (1968); *Fontenot v. Magnolia Petroleum Co.,* 227 La. 866, 80 So.2d 845 (1955)). The Court further acknowledges that under the jurisprudentially established *Perkins* test, an activity may be found to be ultrazhazardous "if it (1) relates to land or to other immovables; (2) causes the injury, and the defendant was directly engaged in the injury-producing activity; and (3) does not require the substandard conduct of a third party to cause injury." *Id.*

[34] *Ham v. Pennzoil Company*, 869 F.2d 840, 842 (5th Cir. 1989).
[35] *Dixon v. Danos and Curole Marine Contractors, Inc.*, 1998 WL 812393, at *2 (E.D.La. 1998)(citing *Ham v. Pennzoil Company*, 869 F.2d 840, 842 (5th Cir. 1989)).
[36] *Fruge ex rel Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)(citing *LeJeune v. Shell Oil Co.,* 950 F.2d 267–270 (5th Cir.1992); *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 n. 9 (5th Cir.1979).

be a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.[37]

As for the first step, the parties do not dispute that the Agreement is devoid of any contractual language expressly reserving KLLM Logistics' right to control A&Z's performance.[38] Therefore, the question is whether there is record evidence that KLLM Logistics exercised operational control over A&Z.

After reviewing the record, the Court finds that there is a dearth of evidence showing that KLLM Logistics lacked any control over A&Z's performance. Rather, the uncontested evidence shows that KLLM Logistics did not employ, discipline, fire, pay, or compensate A&Z Transportation's drivers, and it was not involved in training, qualifying, or instructing A&Z's drivers on how to perform their jobs or operate their vehicles.[39] Rather than address these points head on, Plaintiffs argue that KLLM's requirements that A&Z Transportation and its drivers make check in calls or calls in the event of an emergency, or be subjected to penalties or fines, amounts to operational control.[40] After

---

[37] *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)(quoting Restatement (Second) of Torts, § 414, comment c).

[38] Plaintiffs do object that the terms broker or carrier assigned to the parties per the agreement "establish[es] the true nature of the relationship between KLLM and A&Z to be anything less than a joint venture." Rec. Doc. 70-1.

[39] Rec. Doc. 58, pp. 14-19; 22. The unrefuted evidence also shows that KLLM Logistics does not own any trucks or trailers, and does not maintain A&Z Transportation's equipment. Rec. Doc. 58, pp. 14 and 20.

[40] According to Christopher Estes, a KLLM Logistics broker, "check calls" were simply informational calls from driver or dispatch to KLLM Logistics to let them "know that everything is fine with the load", the driver's location, and that the driver is on-time for delivery. Rec. Doc. 58, p. 13. Rec. Doc. 53-3, p. 4. Plaintiffs' expert Dr. Corsi stated in his report: "[i]n its dealings with carriers, like A&Z Transportation, Inc., KLLM Logistics Services fulfills its corporate mission by controlling the carrier dispatch function along with the provision of loading and delivery information and requiring the carrier's drivers to check in daily with KLLM Logistics Services, Inc.'s dispatch team and fining the drivers for failure to do so." KLLM Logistics Services' form instructed A&Z Transportation's dispatch to contact KLLM Logistics in the event of an emergency. Rec. Doc. 56-4, p. 94.

considering federal jurisprudence involving broker carrier agreements from our sister circuit courts, the Court finds that Plaintiffs' position lacks merit.[41]

In *Jones v. C.H. Robinson Worldwide, Inc.*,[42] the district court for West Virginia concluded that the broker had not exercised "significant control" over its carrier's operations by requiring its carriers to make call-ins. In *Jones*, the carriers' drivers were required to make call-ins informing the broker: (1) when [they were] dispatched to pick up a load; (2) when the driver arrived at the pick-up address; (3) when the trailer was loaded and the freight checked by the driver; (4) during the actual transport of the load for status updates; and (5) when the driver arrived at the delivery address."[43] Drivers were also required to call in to report any problems or issues that arose while transporting the load, including equipment problems or delays.[44] In finding that call-ins did not amount to significant control, the *Jones* court reasoned that such "activities were directed toward the incidental details required to accomplish the ultimate purpose for which [the broker] had been hired by its shippers—the delivery of a load to its proper destination in a timely fashion."[45]

Applying the *Jones* court's reasoning to the facts of the pending matter, the Court finds that KLLM Logistics' requirement that A&Z Transportation and its drivers place similar calls, referred to as "check ins," to apprise KLLM of the driver's status in the

---

[41] The *Jones* decision is one of many involving Broker-Carrier Agreements, where courts have found that requiring check in calls does not amount to "sufficient control" so as to defeat the independent contractor relationship. See *Schramm v. Foster*, 341 F.Supp.2d 536 (D.Md. 2004); P*rofessional Communications, Inc. v. Contract Freighters, Inc.*, 171 F.Supp. 2d 546, 551 (D.Md. 2001)(district court concluded that "mere contract to ship goods" and written instructions on "Driver Trip Sheet" to report any delays to Broker was consistent with role of Broker and did not establish agency relationship" so as to defeat independent contractor relationship).
[42] *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F.Supp.2d 630 (W.D. Va. 2008).
[43] *Id.* at 637.
[44] *Id.*
[45] *Id.* at 639.

delivery process or in the event of an emergency, does not amount to operational control. KLLM Logistics' requirement that its carriers and drivers place check in calls, and its decision to impose penalties upon those carriers or drivers who fail to comply, simply falls within the scope of those "activities directed toward the incidental details" necessary for timely delivery of the shipment to its proper destination.

The Court finds that the undisputed facts fail to support the conclusion that KLLM Logistics exercised control over the means, manner, and methods of A&Z Transportation's work, such that a reasonable juror could find in Plaintiffs' favor. Rather, the overwhelming evidence demonstrates that KLLM Logistics exercised no control over A&Z Transportation or its carriers to defeat their independent contractor relationship. Accordingly, the Court will deny Plaintiffs' *Motion for Partial Summary Judgment* on vicarious liability[46] and will grant KLLM's cross motion.[47]

### B.    Existence of a Joint Venture

Plaintiffs contend that KLLM Transportation and A&Z Transportation were part of a joint venture resulting in KLLM's liability for the acts and omissions of driver Robles. In making this argument, Plaintiffs contend that KLLM Transportation and KLLM Logistics are one in the same for the purposes of this litigation. KLLM counters that Plaintiffs cannot satisfy their burden of proof in establishing all of the elements of a joint venture between either KLLM Transport or KLLM Logistics and A&Z Transportation.

---

[46] Rec. Doc. 56.
[47] Rec. Doc. 57.

"[I]t is well settled that what constitutes a joint venture is a question of law, while the existence or nonexistence of a joint venture is a question of fact."[48] The essential elements of a joint venture are the same as that of a partnership; therefore, joint ventures are governed by the law of partnership.[49] Louisiana law defines a partnership as "a juridical person, distinct from its partners, created by contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."[50] In addition to having the express or implied intent to enter into a joint venture, Louisiana courts have recognized the following seven (7) elements as being required for a joint venture to exist: "(1) a contract between two or more persons; (2) a juridical entity or person is established; (3) contribution by all parties of either efforts or resources; (4) the contribution must be in determinate portions; (5) there must be joint effort; (6) there must be a mutual risk vis-à-vis losses; and (7) there must be a sharing of profits."[51]

In this case, there are only two agreements: (1) the Broker-Carrier Transportation Agreement between KLLM Logistics and A&Z Transportation, and (2) the Motor Transportation Contract between KLLM Transport and BASF. Plaintiffs have not disputed the fact that KLLM Transport did not have any agreement or contract with A&Z

---

[48] *White Haul Transport, Inc. v. Coastal Bridge Co., LLC*, 2010 WL 1424370(E.D.La. April 5, 2010)(quoting *Rester v. Aetna Cas. & Surety Co.,* 598 So.2d 673, 676 (La.App. 3 Cir.1992).
[49] *Hall v. Habul*, 2014 WL 2441177, at *2 (M.D.La. May 30, 2014)(citing *White Haul Transport, Inc. v. Coastal Bridge Co., LLC*, No. 06-1126, 2008 WL 2308858, at *4 (E.D.La. June 3, 2008), citing *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La.App. 1st Cir. 1984), *writ denied*, 458 So.2d 123 (La. 1984)).
The parties fail to address whether, as a matter of law, a joint venturer remains liable following a compromise and release of the other joint venture. The Court need not reach this question, since the Court concludes that there was no joint venture under the facts of this case.
[50] *Transit Management of Southeast Louisiana, Inc., v Group Ins. Admin.*, 226 F.3d 376, 384 (5th Cir. 2000)(quoting La. C.C. art. 2801).
[51] *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 2010 WL 775162, at *3 (M.D.La. Mar. 5, 2010)(citing *Cajun Elec. Power Co-op., Inc. v. McNamara,* 452 So.2d 212, 215 (La.App. 1 Cir. 5/30/84).

Transportation. Instead, Plaintiffs contend that the Court in considering the totality of the circumstances should review both agreements together to find that a joint venture exists because both KLLM Transport and A&Z assumed responsibility for all costs, expenses, and liabilities arising out of transportation of the BASF shipment.

The Court finds no merit in Plaintiffs' creative attempt to create a joint venture between KLLM Transport and A&Z Transportation. On the most fundamental level, the Court cannot turn a blind eye to the fact that there was no contract between KLLM Transport and A&Z Transportation. The individual contracts created binding obligations between KLLM Transport - BASF and KLLM Logistics - A&Z Transportation. The express, unambiguous terms of each of the respective agreements, including indemnification, belong solely to the parties who entered the respective agreements. The absence of a contract between KLLM Transport and A&Z giving rise to a joint venture is arguably fatal to the Plaintiffs' joint venture claim. However, the Plaintiff's joint venture liability theory fails for other reasons as well.

Additionally, there is an absence of record evidence from which a trier of fact could find that a joint venture existed between KLLM Transport and A&Z Transportation. Initially, the Court considers the contractual language of the KLLM Logistics' and A&Z Transportation's Agreement. Section 9 of the Agreement explicitly provides that these two entities intended to create an independent contractor relationship, and nothing more.[52] This contractual language alone is sufficient to defeat Plaintiffs' argument that a joint venture exists.[53]

---

[52] Section 9 of KLLM Logistics and A&Z Transportation's Broker Carrier Agreement which provides: "9. **STATUS of CARRIER**: In the performance of the transportation of services, [A&Z Transportation] shall be

25282

The Broker-Carrier Agreement is also devoid of any provision addressing risk sharing, which is an essential element of a joint venture. Instead, all losses were to be borne by A&Z Transportation as reflected in the indemnity provision, which provided that "[A&Z Transportation] shall indemnify, defend and save harmless [KLLM Logistics] and its subsidiaries and their respective officers, directors, and employees from and against all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, charges, and expenses."[54]

Plaintiffs have not offered any evidence that shows KLLM Logistics and A&Z intended to share profits, which is another necessary element for a joint venture.[55] Instead, the Court finds that Section 3 of the Broker-Carrier Agreement evinces that the parties did not intend to share risks or losses. According to this provision, A&Z Transportation, as the carrier, "shall meet the distinct needs of [KLLM Logistics] through transportation of [KLLM Logistics'] traffic at the rate levels identified in rate confirmations to [A&Z Transportation.]…Payment shall be made by [KLLM Logistics] within thirty [30] days of receipt of clear delivery and such other documents required by [KLLM Logistics]."[56] This contractual provision indicates that A&Z would be compensated in exchange for its successful performance.

---

an independent for-hire contract carrier and shall not be or act as an agent or employee of [KLLM]." Rec. Doc. 58, pp. 1-2.(emphasis original).
[53] In *Dinh v. Louisiana Commerce and Trade Association-Self Insurers Fund*, the district court for the Eastern District of Louisiana held that the parties did not intend to form a joint venture where the contractual language provided as follows: "Section 3. **Structure Services, Ltd. Status.** Structure Services Ltd. [i]s an independent contractor and is not an agent, partner, employee or joint venture of [KYE, Inc.]." 2008 WL 2224865, at *4 (E.D.La. May 27, 2008). Based upon its finding, the *Dinh* court granted the defendant's motion for summary judgment dismissing the plaintiff's claim that the parties had a joint venture.
[54] Rec. Doc. 58, pp. 1-2.
[55] *White Haul Transport, Inc.*, 2010 WL 1424370, at *4.
[56] Rec. Doc. 58, pp. 1-2.

13

Considering the evidence, the Court finds that there is no genuine issue of material fact that would lead a reasonable juror to conclude that KLLM Transport and A&Z Transportation were parties to a joint venture. Accordingly, the Court shall deny Plaintiffs' *Motion for Partial Summary Judgment* on joint venture,[57] and the Court shall grant KLLM Logistics' *Motion for Partial Summary Judgment* as to this claim.[58]

### C. Independent Negligence for Negligent Hiring[59]

Plaintiffs move for a dispositive finding that KLLM is liable for negligently hiring A&Z. KLLM moves for summary dismissal of Plaintiffs' negligent hiring claim on the grounds of an absence of facts sufficient to support their claim.

#### 1. Louisiana Law Regarding Negligent Hiring of Independent Contractor

The Plaintiff claims that KLLM Logistics was negligent in hiring A&Z Transportation as an independent contractor. As this is not a typical employer-employee negligent hiring claim, the Court's first task is determine whether Louisiana law recognizes negligent hiring claims in the principal-independent contractor context. In researching the relevant Federal and Louisiana case law, the Court has identified only a handful of cases that recognize such a claim as being plausible, but discuss the applicable legal standard.[60] Needless to say, negligent hiring cases involving independent contractors are few and far between, and there are no Louisiana Supreme Court cases on point.

---

[57] Rec. Doc. 56.
[58] Rec. Doc. 55.
[59] The Court finds that it is unnecessary to address the subsequent remedial change to KLLM Logistics motor selection policy for the purposes of this *Ruling*.
[60] *McCarroll v. Prime Cut Lawn Care & Tractor Work, LLC*, 2010-1638 (La.App. 1 Cir. 3/25/11), 2010 WL 1104132; C*ertified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 10-948 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277; *Perkins v. Gregory Mfg. Co.*, 95-1396 (La.App. 3 Cir. 3/20/96), 671 So.2d 1036; *Hemphill v. State Farm Ins. Co.*, 472 So.2d 320, 324 (La.App. 3 Cir. 6/26/85).

Louisiana case law recognizes that "[o]ne who hires an irresponsible independent contractor may be independently negligent."[61] In determining whether a principal is "negligent for hiring an irresponsible independent contractor, the court must consider the principal's knowledge at the time of the hiring."[62] "Where the principal has previously hired the contractor with good results, and there is no evidence in the record to demonstrate the principal's prior negligent hiring practices, a claim for negligent hiring fails."[63] In short, a claim for negligent hiring of an independent contractor is viable only when there are facts that the principal had knowledge at the time of the hiring that the contractor was irresponsible.

2. KLLM Logistics' Knowledge About A&Z in November of 2011

In this case, the evidence shows that, at the time KLLM Logistics hired A&Z in November of 2011, it had reviewed Carrier411, which is an industry specific internet site that provides information about motor carriers, including fraud prevention, roadside inspections, SMS BASIC scores, FMSCA carrier safety ratings, and FMSCA insurance requirements and policy coverage.[64] Chris Estes, broker for KLLM Logistics, testified that it is a common practice within the broker-carrier industry to rely on sites such as

---

[61] *Hemphill v. State Farm Ins. Co.*, 472 So.2d 320, 324 (La.App. 3 Cir. 6/26/85).
[62] *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 10-948 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277, at 1283 (citing *Perkins v. Gregory Mfg. Co.*, 95-1396, p. 7 (La. App. 3 Cir. 3/20/96), 671 So.2d 1036, 1040, writ denied, 96-971 (La. 5/31/96), 673 So.2d 1039).
[63] *McCarroll v. Prime Cut Lawn Care & Tractor Work, LLC*, 2010-1638 (La.App. 1 Cir. 3/25/11), 2010 WL 1104132, at *6.
[64] Rec. Doc. 56-4, p. 33. Rec. Doc. 56-4, p. 148. Cassie Icamina Director of KLLM Logistics, testified that while she could not remember any specific interaction with A&Z, when she considered the rate confirmation sheet of November 1, 2011 and the certificate of liability, it indicated to her that KLLM Logistics had complied with its own internal motor carrier selection policy and had checked Carrier411 for A&Z's motor carrier information. Doc. 58, pp. 35-36. See also, Rec. Doc. 59, pp. 13-20. Printout of Carrier411 from March of 2011 when A&Z originally hired by KLLM Logistics. The evidence in the record shows that the policy was to review Carrier411 information before hiring an independent contractor for each job, but subsequent Carrier411 were not printed out. Rec. Doc. 56-4, p. 26.

Carrier411 to gather relevant information.[65] The Carrier411 report confirms that, on November 2, 2011, A&Z had a current valid motor carrier authorization from the federal government, the required insurance policies, carrier safety rating, BASIC scores, and had no fraud activity or negative reports.

Although KLLM Logistics knew of this information, Plaintiffs contend there was more information available that KLLM should have reviewed before hiring A&Z. Specifically, Plaintiffs contends that KLLM's decision to select a motor carrier with an FMSCA rating of "unrated" with three above threshold BASIC scores, without conducting more research about the scores, fell below the reasonable care standard required of brokers. Plaintiffs pull this standard from *Schram v. Foster*, wherein the federal district court applied Maryland law which expressly recognizes that an employer may be liable for negligence in "selecting, instructing, or supervising … [an independent] contractor" which requires a standard duty-risk analysis.[66] The Court finds that Plaintiffs' reliance on *Schram* as to their negligent hiring claim to be misplaced. Under Louisiana law, an independent contractor is not supervised or instructed, which is typical of an employer-employee relationship but not an independent contractor relationship, as is the case here. Furthermore, in the few negligent hiring cases involving independent contractors in Louisiana, the inquiry is specifically directed to what the principal knew at the time it hired the independent contractor. In accordance with the limited available Louisiana precedent, the Court's analysis will focus solely on whether there is record evidence that, at the time of hiring A&Z, KLLM had knowledge that A&Z was irresponsible.

---

[65] Rec. Doc. 58, p. 23.
[66] *Schramm v. Foster*, 341 F.Supp.2d 536, at 551 (D.Md. 2004).

As previously discussed, on November 1, 2011, KLLM relied on the Carrier411 report which shows that KLLM knew that A&Z was a motor carrier authorized by the DOT to engage in transportation as a common carrier of property (except household goods) by motor vehicle in interstate or foreign commerce (USDOT No. 2002678, MC706893). KLLM also knew that A&Z had an FMSCA safety rating score of "unrated," which meant that a safety rating had not yet been assigned to A&Z by the FMSCA. As for A&Z's BASIC scores, KLLM knew that three were above threshold level in the following categories: unsafe driving (83.9); fatigued driving (82.1); and vehicle maintenance (94.8).[67] Plaintiffs argue that these three BASIC scores show that "KLLM had direct knowledge of A&Z's poor above-threshold performance" in these three areas and, pursuant to KLLM's own internal policy, it should have conducted an internal review with A&Z to learn more about the BASIC scores. Plaintiffs adamantly contend that, had KLLM complied with its own internal policy of conducting an internal discussion with KLLM and A&Z representatives, it would not have hired A&Z.

When the Court considers the evidence, it finds that Plaintiffs' claim must fail. It is undisputed that the federal regulations do not prohibit motor carriers from hiring carriers who are "unrated.[68]" Therefore, the fact that A&Z had such a rating is not evidence that A&Z was an irresponsible motor carrier. There has been no evidence offered to show that KLLM's prior dealings with A&Z had been negative such that it should have known A&Z was an irresponsible contractor. The record is also devoid of any evidence demonstrating that KLLM Logistics had a history of hiring irresponsible

---

[67] Rec. Doc. 56-4, p. 58.
[68] The federal regulations provide that generally, only certain motor carriers rated as "unsatisfactory" are prohibited from operating a commercial motor vehicle. 49 C.F.R. Section 385.13.

contract motor carriers. Additionally, there is no evidence showing that, had KLLM Logistics conducted a more in-depth review into A&Z's BASIC scores, the ultimate outcome—the selection of A&Z—would not have occurred. Plaintiffs essentially put forth conclusory statements that such a turn of events would have been inevitable; yet, conclusory statements without evidentiary support cannot defeat summary judgment. Finally, the record evidence establishes that BASIC scores are not indicative of motor carrier safety.[69] Hence, the Court finds that, when it considers the evidence, no reasonable juror could find that KLLM Logistics had knowledge that A&Z was an irresponsible independent contractor at the time it hired A&Z for the BASF shipment.

Accordingly, the Plaintiffs' *Motion for Partial Summary Judgment* regarding negligent hiring shall be denied, and KLLM Logistic's *Motion for Partial Summary Judgment* shall be granted as to this claim.

## IV. CONCLUSION

For the foregoing reasons,

Plaintiffs' *Motion for Partial Summary Judgment* on vicarious liability[70] is DENIED and Defendant's cross *Motion for Partial Summary Judgment* on vicarious liability[71] is GRANTED;

Plaintiffs' *Motion for Partial Summary Judgment* on joint venture[72] is DENIED, and the Defendant's *Motion for Partial Summary Judgment* on joint venture[73] is GRANTED;

---

[69] Rec. Doc. 63, p. 121; Rec. Doc. 56-4, pp. 14-15 (Plaintiffs' expert does not dispute the FMSCA disclaimer); Rec. Doc. 58, pp. 70-71; Rec. Doc. 70-7, p. 206; pp. 207-208; Rec. Doc. 70-8, p. 14.
[70] Rec. Doc. 56.
[71] Rec. Doc. 57.
[72] Rec. Doc. 56.
[73] Rec. Doc. 55.

Plaintiffs' *Motion for Partial Summary Judgment* as to negligent hiring[74] is DENIED and the Defendant's *Motion for Summary Judgment* as to negligent hiring[75] is GRANTED.

Signed in Baton Rouge, Louisiana on February 19, 2015.

*[Signature: Shelly D. Dick]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[74] Rec. Doc. 56.
[75] Rec. Doc. 57.